UNITED STATES *v.* GANE AND INGRAM, INC. (No. 3934)[1]

[1] T. D. 48264.

United States Court of Customs and Patent Appeals, April 6, 1936

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *Webster J. Oliver*, special attorney, of counsel), for the United States.
*James W. Bevans* for appellee.

[Oral argument February 4, 1936, by Mr. Lawrence and Mr. Bevans]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

This is an appeal from a decision of the United States Customs Court, Third Division, in a reappraisement proceeding.

In December 1933 appellee made two entries covering two importations from Holland of a coal-tar product known as meta cresyl methyl ether which, it appears from the record, is used as an ingredient in the manufacture of artificial musk. The merchandise is conceded to be classifiable for duty under paragraph 27 of the Tariff Act of 1930, and hence subject to both a specific and an ad valorem duty.

The controversy seems to have arisen primarily over the value basis upon which the ad valorem rate should be assessed. Subparagraph (c) of paragraph 27 of the Tariff Act of 1930 provides:

(c) The ad valorem rates provided in this paragraph shall be based upon the American selling price (as defined in subdivision (g) of section 402, Title IV), of any similar competitive article manufactured or produced in the United States. If there is no similar competitive article manufactured or produced in the United States then the ad valorem rate shall be based upon the United States value, as defined in subdivision (e) of section 402, Title IV.

Section 402 (e) so referred to reads:

(e) UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation, and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

Section 402 (g) so referred to reads:

(g) AMERICAN SELLING PRICE.—The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed

ready for delivery, at which such article is freely offered for sale to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

It will be observed that paragraph 27 (c), *supra*, provides only two bases, viz, American selling price and United States value as respectively defined. The importer of the merchandise here involved, however, claimed that neither of those values existed, and, adopting the theory that, under such circumstances, the foreign or export value, as defined respectively by sections 402 (c) and 402 (d) of said act, should be taken as the basis upon which to assess the ad valorem duties, made its entries accordingly. Such entries were made at 2.42 Dutch guilders per kilo, that being the price named in the consular invoices. It was claimed by importer that the foreign value and the export value were the same and that the entered value was the price actually paid for the merchandise.

The local appraiser advanced the value to $1.98 per pound, it being noted in red ink on each of the entries, "Appraised at $1.98 per lb. Section 402 g." Section 402 (g), *supra*, as appears from its text, defines American selling price, so it is presumed the local appraiser found that there was an American selling price.

The importer appealed to reappraisement and at the outset of the trial before the single judge, its trial attorney stated:

Mr. STRAUSS. There certainly is no comparable American article, as far as we are advised, that was sold or freely offered for sale in the markets. It may have been produced here, but if so produced, it was produced by parties who used it themselves in the production of something else, and consequently, if that state of affairs exists, there is no American selling price, freely offered American selling price, and no United States value, and consequently we have to fall back on the foreign or export value, which are identical, and which is the price that we actually paid.

The effect of the decision of the trial judge was to sustain the contentions of the importer upon both questions of law and questions of fact, and, upon appeal by the Government, the Third Division affirmed the decision of the trial judge, making the following specific findings:

We * * * find, first, that there was no similar competitive article, manufactured or produced in the United States, being sold or offered for sale in the ordinary course of trade in the usual wholesale market nor any price that any manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold in the ordinary course of trade in the usual wholesale quantities at the time of exportation; second, that neither this merchandise nor any similar imported merchandise was freely offered for sale at the time of exportation in the usual wholesale quantities in the ordinary course of trade in this country; third, that the instant merchandise is dutiable at the foreign value which is the entered value as disclosed by the consular invoice.

The Government then took the instant appeal to this court assigning a large number of alleged errors upon different issues raised. Because of a failure of proof respecting United States value as hereinafter specifically pointed out, there are numerous of these assignments upon which it is unnecessary for the court to pass, but it seems proper in the interest of clarity to point out the elements of the burden assumed by the importer in its appeal to reappraisement.

Section 501 of the Tariff Act of 1930 carries a provision which is new to tariff legislation, reading:

The value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise.

Under prior tariff acts the courts had declared the general rule to be that when appeal was taken to a single judge sitting in reappraisement no presumption of correctness attended the appraisement of the local appraiser and the trial before the single judge was a proceeding *de novo*. *Meadows, Wye & Co. (Inc.) et al.* v. *United States,* 17 C. C. P. A. (Customs) 36, 42, T. D. 43324; *United States* v. *Malhame & Co.,* 19 C. C. P. A. (Customs) 164, T. D. 45276, with their respective citations. This rule obviously was changed by the above-quoted provision of the Tariff Act of 1930, and it is now incumbent upon an appealing party to overcome the presumption of correctness of the value found by the local appraiser, but even under the prior rule this court repeatedly held that the burden rested upon a party appealing "to meet every material issue involved in the case." *United States* v. *T. D. Downing Co.,* 20 C. C. P. A. (Customs) 251, T. D. 46057, with cases cited.

It is not our purpose here to pass upon the correctness of importer's legal contention to the effect that in the absence of both American selling price and United States value, the proper basis for the assessment of the ad valorem duties provided in paragraph 27 of the Tariff Act of 1930, is either foreign value or export value; but assuming it to be correct, for the purposes of this case, without so holding, the burden resting upon the importer here (in the light of the provision respecting the presumption of correctness attaching to the value found by the appraiser and in the light of our many decisions wherein we have outlined the matters which a party appealing to reappraisement must establish by evidence) may be stated as follows:

First, it was incumbent upon it to overcome the presumption of correctness attaching to the local appraiser's valuation. Since the local appraiser himself indicated that his value was based upon American selling price, it would seem that the presumption of correctness as to that price was capable of being overcome in one of at least two ways, to wit, (a) by showing that no American selling price as defined by section 402 (g), *supra*, existed, or (b) by showing that the

American selling price, if one did exist, was different from that which the local appraiser found.

The importer adopted the first of these alternatives and attempted to show that there was no statutory American selling price.

Second, assuming the non-existence of an American selling price to have been established, it then became incumbent upon the importer to show that no United States value as defined by section 402 (e), *supra*, existed, or, if such value did exist, what that value was.

Third, upon the legal theory presented by importer's trial attorney as quoted, *supra*, it was further incumbent upon it to show, as was said in the *Downing Co.* case, *supra*,

\* \* \* (1) the foreign value and (2) the export value, to the end that the higher might be taken as the dutiable value, or to show (1) a foreign value and the non-existence of an export value, or (2) an export value and the non-existence of a foreign value.

Before us it is contended on behalf of the Government that there is no substantial evidence to support any of the requirements so outlined.

We shall not review the testimony respecting the absence of American selling price. It is sufficient to say that while such testimony is meager we nevertheless regard it as presenting some substantial evidence to support the finding of the appellate division upon that point.

As to the absence of United States value, however, the situation is different. Importer called as its only witness an official of the importing company. His testimony has been examined by us with minute care and we find that substantially all of it that is pertinent relates exclusively to questions incident to, and efforts to ascertain whether there was, an American selling price.

The direct testimony with respect to *imported* meta cresyl methyl ether (by which United States value is measured) is comprised in the following:

Q. In your experience have you known of any *imported* meta cresyl methyl ether having been offered in this market?—A. No. (Italics ours).

\*   \*   \*   \*   \*   \*   \*

Q. Is it part of your duties to inform yourself on those points?—A. Yes.

Q. And did you know of any other available sources of information to which you could apply?—A. No.

It may be said that the witness stated that one of the sources from which information was sought was the office of the United States appraiser at the port of New York. One would naturally suppose that some inquiry would have been made there concerning importations, but the witness himself during cross-examination gave positive testimony to the contrary as follows:

X Q. Did you try to find out whether any other importation of such a commodity was made prior to your importations, or did you try to find out from

the appraiser whether it was manufactured in this country or not?—A. *Whether it was manufactured.*

X Q. Whether it was manufactured in this country, and whether it was imported in this country prior——A. *No. Whether it was manufactured in this country.* (Italics ours.)

The foregoing testimony was given with respect to what information the witness, in person, sought from the appraiser's office. He further testified during cross-examination that after he had failed to obtain information, in person, he communicated with another party over the telephone and requested that party to try to obtain it for him, and was permitted to state that such party called him over the telephone the next day and told him he had been unable to obtain it.

During this part of the cross-examination there was the following testimony:

X Q. What you were after was to find out whether or not this product was manufactured in this country; that is what you wanted to know?—A. *Whether this article was being imported and at what rate of duty, if it was imported, it was classified.* (Italics ours.)

Upon redirect examination no questions were asked bearing in any way upon any efforts to obtain information as to United States value, and the foregoing contradictory statements as to such efforts constitute all the evidence in the record upon that important phase of the case.

So, all that the record actually discloses bearing upon the question of United States value, as defined by section 402 (e), *supra* (other than assertions of counsel during the trial which, however accurate they might have been, can not be accepted as evidence), is the statement of the witness to the effect that in his experience he had not known of any imported meta cresyl methyl ether "having been offered in this market."

We feel that this can not properly be accepted as substantial evidence to support the second finding of the appellate division—

that neither this merchandise nor any similar imported merchandise was freely offered for sale at the time of exportation in the usual wholesale quantities in the ordinary course of trade in this country.

It is quite true that there is no evidence showing that this or any similar merchandise was freely offered for sale, but the burden was not upon the Government to show the affirmative; it was upon the importer to show the negative.

In view of the obvious failure of the importer to sustain the burden resting upon it with respect to United States value, there should have been a dismissal of its appeal to reappraisement, the result of which would have been to leave in full force and effect the value fixed by the local appraiser. We think such action should be taken now.

The importer had its day in court and failed to produce evidence without which, under its own theory of law, it can not prevail.

The decision of the appellate division is *reversed* and the case *remanded* to it with directions to remand the same to the trial court with instructions to dismiss importer's appeal to reappraisement.